UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| ROBBIE LEE PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 5:18-cv-179-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| NANCY A. BERRYHILL, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | | |

\*\*\*

Plaintiff Robbie Lee Phillips brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Acting Commissioner of Social Security. Specifically, the Plaintiff claims that the Administrative Law Judge ("ALJ") failed to consider relevant medical evidence in the record and failed to consider the entire record, constituting reversible error. The Court, having reviewed the record and the cross motions for summary judgment filed by the parties, will **AFFIRM** the Commissioner's decision because the ALJ provided enough information in her written decision to demonstrate that she made a reasoned decision that is supported by substantial evidence in the record.

## I. Standard for Determining Disability

Under the Social Security Act, a disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform past relevant work; and, if necessary, Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II. Procedural and Factual History

Phillips filed an application for disability insurance benefits (DIB) and supplemental security income (SSI) on March 18, 2014, alleging disability as of May 5, 2011. [TR 199]. Phillips alleged disability due to lower back pain, depression, high blood

2

pressure, and anxiety. [TR 225]. Phillips's application was denied initially and upon reconsideration. [TR 1-7].

### A. Relevant Medical Evidence

**(1) Medical Evidence Related to Back and Leg Pain**

Phillips submitted medical evidence from his primary care physician, Dr. Stephen Green. Dr. Green treated Phillips for back and leg pain, depression, and anxiety. [TR 296-457, 460-68, 576-90, 602-29, 649-57]. Phillips was also treated on numerous occasions by an advanced practice registered nurse ("APRN"), Leann Brown, who worked with Dr. Green. [*See generally id.*].

In 2011, Phillips presented to Dr. Green with severe leg and back pain. [TR 306]. Dr. Green's examination notes report but that Phillips had "good flexion and extension and lateral bending of the spine and rotation, but stiffness [was] noted in all these joints." [TR 306]. Phillips was prescribed Lortab, Flexeril, Naprosyn, and a tapering dose of Prednisone. [Tr 305].

An MRI study was conducted on Phillips's lumbar spine. The MRI showed disc protrusions of differing sizes at L4/5 and L5/S1 and "facet hypertrophy resulting in moderate bilateral neural foraminal stenosis." [TR 456]. Dr. Green adjusted Phillips's medications to control his back pain and referred Phillips to a neurologist. [TR 303-04].

Subsequently, Phillips was treated by Dr. James R. Bean, a neurosurgeon. [TR 469-71]. Dr. Bean noted that Phillips

3

complained of back pain that radiated to his legs and bothered him whether he is standing, sitting, or lying down. [TR 470]. Dr. Bean determined that the MRI showed a degenerative disc bulge at L4-5 and a mild degenerative disc at L5-S1. [TR 469]. Still, Dr. Bean said that, "There is no instability, stenosis, dural or nerve root compression or other correctible cause of back pain. Unfortunately, there is little I have to offer him for his back[-]pain problem." [*Id.*].

Phillips continued treatment with Dr. Green, who noted tenderness at the L4 to S2 vertebrae. [TR 300]. Moreover, Phillips reported that he was unable to work due to his back pain. [*Id.*]. Dr. Green recommended that Phillips apply for disability benefits due to "multiple problems." [*Id.*].

In October 2011, Phillips completed a state agency pain and daily activities questionnaire. [TR 232-36]. Phillips reported pain all over but that the pain was particularly severe in his lower back and legs. [TR 232]. Furthermore, Phillips reported taking numerous medications but indicated that the medication does not completely relieve his pain. [TR 233]. Phillips also stated that he had worked in construction but had to quit due to his pain and that he struggled putting his shoes and socks on but that he did perform some householdchores infrequently. [TR 235].

In late 2011, Phillips saw Dr. Anjum Bux, an anesthesiologist and pain management specialist, for severe pain radiating from his

4

lower back down both legs. [TR 482]. Dr. Bux treated Phillips with two lumbar epidural steroid injections. [TR 479-80, 472-73].

In early 2012, Dr. Green noted that Phillips had low back tenderness with reduced range of motion, but that Phillips had full leg strength. [TR 298]. Dr. Green continued to treat Phillips's constant back pain with various prescription medications, including Lortab, Methadone, Naprosyn, and Flexeril. [TR 298]. Still, at this medical visit, Dr. Green noted that "Robbie looks better. He is more perky. He is making eye contact and actually made a little joke." [*Id.*]. Additionally, Phillips reported that he had more energy and was getting out more. [*Id.*].

Phillips continued to see Dr. Green from 2012 through 2014 for continuous severe back pain. Dr. Green attempted to adjust Phillips's medication to give him some relief but Phillips reported that his pain continued.

In January 2016, Phillips began treatment with Dr. Traci Westerfield, a pain management specialist. Dr. Westerfield noted that Phillips could only stand and sit for short periods without having to change positions due to his pain. [TR 659]. Phillips also reported that his pain caused issues with his concentration and sleep. [*Id.*]. Dr. Westerfield diagnosed Phillips with low back pain and chronic pain due to trauma and prescribed Oxycodone and Gabapentin. [TR 663-64].

In March 2016, Phillips was treated in the emergency department at Fort Logan Hospital for symptoms related to his lower back and leg pain. [TR 674-76]. Phillips was given an injection of morphine and Dilaudid. [*Id.*]. Phillips returned to the emergency room the next day complaining of similar symptoms and was again treated with morphine and Diluadid. [TR 596-98].

Finally, a second MRI study of Phillips's lumbar spine in August 2016 showed superimposed left foraminal disc protrusion at L4-5 that combined with facet anthropathy to produce severe bilateral neural foraminal narrowing and spinal canal stenosis. [TR 677-79]. The MRI also showed a disc bulge and facet anthropathy at L5-S1 with bilateral neural foraminal narrowing, as well as multilevel degenerative disc disease. [*Id.*].

**(2) Medical Evidence Related to Depression and Anxiety**

Dr. Green also treated Phillips for anxiety and depression. Dr. Green's exam notes state that Phillips cried in the exam room when discussing his family history and past medical history. [TR 306]. Phillips also reported feeling very depressed, overwhelmed, anxious, and difficulty sleeping. [TR 306-07].

In response to these symptoms, Dr. Green treated Phillips with a variety of medications, including Celexa, Prozac, and Xanax. [*See* TR 298-311]. At times, Phillips noted some marginal improvement in his depression or anxiety but still reported feeling anxious and depressed at follow up visits. [TR 300-02].

6

In June 2012, Phillips reported mood swings, loss of appetite, wanting to stay in the house, and insomnia. [TR 395-97]. In response, Dr. Green prescribed an antipsychotic medication, Risperidone.

In July 2015, Phillips was treated in the emergency department at Ephraim McDowell Regional Medical Center for symptoms of depression and anxiety accompanied by suicidal thoughts. [TR 591-93].

Later, in December 2015, Phillips became intoxicated and tried to take a weapon from a police officer during an altercation. [TR 630-33]. During the altercation, Phillips told the officer to shoot him. [*Id.*].

Subsequently, Phillips was treated by various medical professionals for symptoms related to depression and anxiety. Phillips continued to seek treatment from Dr. Green but also saw a counselor at Bluegrass Comprehensive Care and was treated by APRN Jo Noel at Ephraim Specialty Annex Center. [*See* TR 635-42, 646-48]. These medical professionals noted that Phillips presented with symptoms related to anxiety and severe depression and treated Phillips with various prescription medications, including Effexor, Trazodone, and Buspirone. [*See id.*].

### B. ALJ Decision and Current Appeal

On October 25, 2016, Phillips appeared at an administrative hearing before ALJ Kendra S. Kleber. [TR 56-81]. Phillips was represented by an attorney at the hearing.

After the hearing, the ALJ issued a written decision finding that Phillips had the residual functional capacity ("RFC") to perform a range of medium work with postural and environmental limitations, as well as mental limitations. [TR 30]. The ALJ found that this RFC precluded Phillips from performing relevant past work but found that Phillips could perform work existing in significant numbers in the national economy. [TR 32-33]. Thus, the ALJ found that Phillips was not disabled. [TR 34]. The Appeals Council denied Phillips request for review on January 9, 2018. [TR 1-7].

Subsequently, Phillips filed the present appeal in this Court on March 14, 2018. [DE 1]. Consistent with the Court's standing scheduling order in Social Security cases, the parties filed cross motions for summary judgment [DE 12; DE 14]. As a result, this matter is ripe for review.

### III. Standard of Review

When reviewing the ALJ's decision, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012). This Court determines only whether the

ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court is to affirm the decision, provided it is supported by substantial evidence, even if this Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Even so, the existence of substantial evidence supporting the Commissioner's decision cannot excuse failure of an ALJ to follow a mandatory regulation that "is intended to confer a procedural protection" for the claimant. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543, 546–47 (6th Cir. 2004). "To hold otherwise ... would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory." *Id.* at 546; *see also Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011) ("An ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009))).

## IV. Analysis

The sole issue raised by Phillips in the present appeal is that the ALJ discounted the severity of Phillips's impairments, as well as his symptoms and limitations, by ignoring large portions of the medical evidence from primary care physician Dr. Stephen Green and other medical providers. [DE 12-1 at 1, 12-15, Pg ID 732, 743-46].

Federal regulations provide that the Social Security Administration makes disability determinations based on "all the evidence in [the] case record." 20 C.F.R. § 404.1520(a)(3). Furthermore, the Social Security Administration is to "always consider the medical opinions in [the] case record together with the rest of the relevant evidence [they] receive." 20 C.F.R. § 404.1527(b). Finally, "[i]n evaluating the intensity and persistence of [a claimant's] symptoms, [the Administration] consider[s] all of the available evidence from [a claimant's] medical sources and nonmedical sources about how [a claimant's] symptoms affect [them]." 20 C.F.R. § 404.1529(c)(1).

In the present case, the Plaintiff contends that "[t]he ALJ summarized the medical evidence from treating providers in two paragraphs" and failed to mention the medical evidence provided by some specialists. [DE 12-1 at 1, 13, Pg ID 732, 744]. In response, the Commissioner advances what may be most accurately described as the "trust us" standard of review, whereby this Court is asked to

simply take an ALJ at his or her word when he or she says that they "engaged in a careful review of the entire record," or something similar.

On the one hand, the Commissioner is correct that it is the "general practice" of courts to "take a lower tribunal at its word when it declares that it has considered a matter." *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007); *see also Blevins v. Colvin*, No. 6:14-cv-190-HAI, 2015 WL 4644481, at *5 (E.D. Ky. Aug. 4, 2015). The ALJ "is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953).

Still, every general rule has exceptions and this Court is not obliged to accept unexplained legal conclusions from a lower tribunal. An ALJ cannot simply make her decision appeal proof by adding a conclusory statement that she "carefully considered all the record evidence." At least some summarization of the relevant evidence that was considered, and some explanation of the weight and import assigned to that evidence, is required for two primary reasons. First, public trust in government institutions requires, at bottom, that those institutions explain their actions to the public at large and generally conduct business in a transparent

manner. Otherwise, claimants are left without explanation about why their claim for benefits was denied and counsel representing these claimants have no ability to review and challenge the decision on appeal. Second, the ALJ must provide a sufficient explanation of her findings to allow the courts to engage in meaningful review of the ALJ's decision.

In this case, when evaluating Phillips's residual functional capacity, the ALJ noted that Phillips had testified about his anxiety and depression, that he had a diagnosis of depression and was taking prescription medications for this condition, had been treated by APRN Leann Brown, APRN Jo Noel, and Comprehensive Care. [TR 30]. Additionally, the ALJ discussed Phillips' back pain, mentioned the MRI results, and mentioned, albeit briefly, treatment by Drs. Green, Stafford, Westerfield, and APRN Leann Brown. [*See* TR 31].

Phillips is correct that the ALJ summarized substantial amounts of medical evidence in these two paragraphs. Furthermore, the Court shares Phillips's contention that additional and more comprehensive explanation is desirable in this case. Still, the fact that the ALJ provided a cursory summary of the relevant medical evidence does not indicate that she did not consider all the relevant medical evidence in the record. The ALJ included information from treatment records and medical tests in her written decision. [TR 30-31].

Phillips notes that the ALJ did not mention his treatment with Dr. Bux, a pain treatment specialist, or Dr. Bean, a neurosurgeon. [DE 12-1 at 11, Pg ID 742]. Still, the fact that the ALJ did not expressly mention these medical providers by name does not indicate that she failed to consider the medical evidence and opinions they provided.

Moreover, and more important, the evidence provided by these two specialists is largely cumulative of other objective medical evidence in the record that the ALJ considered. For example, Dr. Bean's treatment notes confirm that Phillips presented with severe back and leg pain, but Dr. Bean concluded that Phillips was not a candidate for surgery and that there was not much that he could do to help treat Phillips's pain. Furthermore, Phillips visited Dr. Bux for assistance with pain management and Dr. Bux treated Phillips with two injections for back pain. But there is no indication that Dr. Bux made independent findings regarding the severity of Phillips's pain.

Finally, Phillips makes much of his assertion that the ALJ ignored medical evidence concerning the severity, intensity, persistence, and limiting effects of Phillips's physical and mental impairments. To the contrary, the ALJ expressly mentions that Phillips was treated for severe depression and anxiety disorder by various medical professionals. [TR 30]. The treatment notes of these professionals contain Phillips's subjective reports

about his symptoms and limitations as well as the providers' diagnoses and medical findings. Similarly, the ALJ mentioned that Phillips reported that he left his job because of back pain, noted that Phillips reported pain after standing too long, expressly considered the results of two MRIs, and discussed some of the findings of treating physicians, including Dr. Green, Ms. Brown, and Dr. Westerfield. [TR 31]. This discussion demonstrates that the ALJ considered medical evidence directly relevant to the severity, persistence, and limiting effects of Phillips's physical and mental conditions and impairments.

In sum, the ALJ must consider the relevant evidence in the record and come to a reasoned conclusion that is supported by substantial evidence. At a minimum, the ALJ has a duty to provide some explanation for her decision based on the relevant record evidence. Still, that obligation does not require the ALJ to cite extensively to the record or to mention every potentially relevant piece of medical evidence in her decision.

In the present case, the medical evidence consisted of hundreds of pages of examination notes and medical test results. The ALJ stated that she carefully reviewed the record evidence and then demonstrated that she had considered the relevant evidence by citing to the results of relevant medical tests, discussing the treatment notes and opinions of various medical professionals, noting that Phillips was taking various medications for his

14

physical and mental health issues, and observing some of Phillips's subjective reports of his symptoms.

Of course, the ALJ could have been more thorough. In these situations, more explanation is usually more desirable than less explanation. Still, the ALJ met her burden to explain how she reached her decision based on the opinions of medical experts and the objective medical evidence in the record. As a result, the ALJ's decision is supported by substantial evidence and the Commissioner's decision must be affirmed.

## V. Conclusion

Here, the ALJ considered and summarized the relevant medical evidence in the record. The fact that the ALJ did not mention all the evidence that the claimant finds relevant nor engaged in an exhaustive review of the medical examinations and test results does not indicate that she did not consider all the relevant medical evidence. The ALJ's written decision indicates that she made her RFC determination based on the subjective reports of the claimant about symptoms, the treatment notes of treating physicians and medical professionals, the opinions of medical professionals, and the results of medical tests. As such, the ALJ met her burden to demonstrate that she made a reasoned decision the is supported by substantial evidence and the Commissioner's decision must be affirmed.

Accordingly, **IT IS ORDERED** as follows:

(1) The Commissioner's final decision is **AFFIRMED**;

(2) Plaintiff's motion for summary judgment [DE 12] is **DENIED**;

(3) Defendant's motion for summary judgment [DE 14] is **GRANTED**;

(4) Judgment in favor of the Defendant will be entered separately.

This the 29th day of March, 2019.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge